**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| UNION INSURANCE COMPANY | ) | |
| OF PROVIDENCE, and EMPLOYERS | ) | |
| MUTUAL CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-700 |
| | ) | |
| FLO-SYSTEMS, INC., FSI | ) | |
| TANKS & SILOS, INC., and | ) | |
| CITY OF O'FALLON, MISSOURI | ) | |
| | ) | |
| Defendants. | ) | |

<u>**COMPLAINT FOR DECLARATORY JUDGMENT**</u>

NOW COME Plaintiffs, UNION INSURANCE COMPANY OF PROVIDENCE and EMPLOYERS MUTUAL CASUALTY COMPANY, by their attorneys, TRAUB LIEBERMAN STRAUS AND SHREWSBERRY, LLP, and for their Complaint for Declaratory Judgment against the Defendants, FLO-SYSTEMS, INC., FSI TANKS & SILOS, INC., and CITY OF O'FALLON, MISSOURI alleges the following:

**THE PARTIES**

1.      Plaintiff, UNION INSURANCE COMPANY OF PROVIDENCE ("UNION"), is an Iowa corporation with its principal place of business in Iowa.

2.      Plaintiff, EMPLOYERS MUTUAL CASUALTY COMPANY ("EMC"), is an Iowa corporation with its principal place of business in Iowa.

3.      Defendant, FLO-SYSTEMS, INC. ("FLO-SYSTEMS"), is an Illinois corporation with its principal place of business in Troy, Illinois.

4.      Defendant, FSI TANKS & SILOS, INC. ("FSI"), is an Illinois corporation with its principal place of business in Troy, Illinois.

5.      Defendant, THE CITY OF O'FALLON, MISSOURI ("Underlying Plaintiff"), is a charter city located in St. Charles County, Missouri.

6.      Underlying Plaintiff is the plaintiff in the lawsuit styled *City of O'Fallon, Missouri v. FLO-SYSTEMS Inc., et al.* pending under case number 1911-CC00494 in St. Charles County, Missouri (the "Underlying Lawsuit"), for which coverage is sought from UNION and EMC by FLO-SYSTEMS and FSI.  Underlying Plaintiff is joined as a defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that it may be bound by the judgment entered in this case.  If Underlying Plaintiff executes a stipulation agreeing to be bound by any judgment entered herein, UNION and EMC will voluntarily dismiss Underlying Plaintiff from this action.

## JURISDICTION AND VENUE

7.      Plaintiffs bring this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 1332 (a).

8.      There exists an actual and justiciable controversy among the parties concerning the rights, duties, and obligations of Plaintiffs under and pursuant to the policies of insurance described herein in connection with the Underlying Lawsuit.

9.      The jurisdiction of this Court is premised upon 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the Plaintiffs and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.     The amount in controversy exceeds the sum of $75,000. Specifically, this case relates to coverage sought from a general liability policy issued by UNION providing liability limits of $1 million subject to its terms, conditions, and exclusions, and an excess liability policy issued by EMC providing liability limits of $1 million subject to its terms, conditions, and

exclusions.  Additionally, the value of the services FLO-SYSTEMS and/or FSI agreed to perform for Underlying Plaintiff, for which the Underlying Lawsuit seeks repairs and/or remediation from FLO-SYSTEMS and FSI, is $633,580.

11.    Venue is premised upon 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to this lawsuit occurred in this judicial district, because the policies of insurance subject to this Complaint were issued to FLO-SYSTEMS and FSI within this judicial district.

## THE UNDERLYING LAWSUIT

12.    On May 13, 2019 Underlying Plaintiff initiated the Underlying Lawsuit by filing a Petition.  A true and correct copy of the Petition in the Underlying Lawsuit is attached hereto as **Exhibit A**.

13.    The Petition names Du-Con, Inc. ("Du-Con") and FLO-SYSTEMS as defendants.

14.    The Petition alleges that on or around December 12, 2013, Du-Con entered into a contract with Underlying Plaintiff to be the general contractor for the construction of a two-million gallon fusion bolted steel ground storage tank (the "Water Tank") that would provide drinking water to the residents of O'Fallon.

15.    The Petition alleges that Du-Con subcontracted a portion of the Water Tank construction, as well as the purchase and installation of construction sealant, to FLO-SYSTEMS. FLO-SYSTEMS agreed to perform an inspection of the Water Tank within eighteen months of completion to review overall construction and to check for any issues with the sealant used, Sikaflex-TS Plus.

16.    The Petition alleges that approximately twelve months after completion of the Water Tank, FLO-SYSTEMS complied with an inspection request. Upon inspection, it was

determined that the sealant "failed to 'set up' properly" causing the sealant to be viscous and capable of contaminating the water in the Water Tank which would render the water unsuitable for human consumption.

17.     The Petition alleges that Underlying Plaintiff demanded a remedy of the defective sealant, and filed a lawsuit against Du-Con and FLO-SYSTEMS.

18.     The Petition alleges that Du-Con and FLO-SYSTEMS attempted to remedy the sealant problems in 2017 and 2018, announcing in 2018 that the problem was fixed, suitable and functioning.

19.     The Petition alleges that a few months later, Underlying Plaintiff discovered that the Water Tank suffered from the same defect that existed prior to the remediation attempts.

20.     The Petition alleges that Underlying Plaintiff "cannot, and dares not, refill the water tank and allow its residents to drink water from the Water Tank until the Sikaflex is replaced and the water is safe."

21.     The Petition asserts Count I for Breach of Contract seeking specific performance, specifically the repair, replacement, and/or remediation the sealant issue.

22.     The Petition asserts Count II for Breach of Contract seeking the cost of replacing the sealant using another contractor or subcontractor.

23.     The Petition asserts Count III for Breach of Implied Warranty of Fitness alleging that the defendants failed to supply suitable goods to Underlying Plaintiff's detriment and seeking damages for said breach.

24.     The Petition asserts Count IV for Negligence alleging that Du-Con and FLO-SYSTEMS negligently designed and/or negligently constructed the Water Tank and seeks damages for said breach of duty.

25.     On January 6, 2020 Du-Con filed a Third Party Petition seeking indemnification from FSI.  A true and complete copy of the Third Party Petition is attached hereto as **Exhibit B**.

26.     The Third Party Petition alleges that Du-Con and FSI entered into a subcontract pursuant to which FSI agreed to provide and install the Water Tank, including the sealant, and to indemnify Du-Con "from and against any and all claims of any nature whatsoever, including damages to property [. . .] together with all expenses incurred in defending such claims [. . .]."

27.     The Third Party Petition alleges that FSI agreed to add Du-Con as an Additional Insured on FSI's general liability insurance policy.

28.     In a letter dated July 31, 2020, FLO-SYSTEMS and FSI tendered the defense of the Petition and Third-Party Petition to Plaintiffs.

29.     The July 31, 2020 letter was EMC's first notice of the Underlying Lawsuit and the damage alleged in the Underlying Lawsuit.

### THE INSURANCE POLICIES

30.     UNION issued a commercial general liability insurance policy to FLO-SYSTEMS as the named insured bearing policy no. 5D7-67-01-18, effective from October 1, 2017 through October 1, 2018, and providing liability limits of $1 million per occurrence and $2 million in the aggregate subject to its terms, conditions, and exclusions (the "Union Policy").  A true and correct copy of the Union Policy is attached hereto as **Exhibit C**.

31.     The Insuring Agreement of Coverage A (Bodily Injury and Property Damage Liability) of the Union Policy provides, in relevant part, as follows:

**1.     Insuring Agreement**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to

defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. [. . .]

* * *

**b.**   This insurance applies to "bodily injury" and "property damage" only if:

**(1)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory;

**(2)**   The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**   Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**   "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.**   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**   Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**   Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

32.     EMC issued an excess liability insurance policy to FLO-SYSTEMS as named insured bearing policy no. 5J7-67-01-18, effective from October 1, 2017 through October 1, 2018, and providing liability limits of $1 million per occurrence and $1 million in the aggregate subject to its terms, conditions, and exclusions (the "EMC Policy"). A true and correct copy of the EMC Policy is attached hereto as **Exhibit D**.  The EMC Policy applies in excess of the Union Policy and is subject to a $10,000 self-insured retention.

33.     The Insuring Agreement of Coverage A (Bodily Injury and Property Damage Liability) of the EMC Policy provides, in relevant part, as follows:

**1.     Insuring Agreement**

    **a.**     We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of the "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. [. . .]

* * *

    **c.**     This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory;

        **(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)**     Prior to the policy period, no insured listed under Paragraph **1.a.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an

"occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**d.**     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**e.**     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

34.     The EMC Policy affords coverage in excess of the "retained limit." The Definitions section of the EMC Policy defines the term "retained limit" and related terms to mean the following:

**19.**     "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

\* \* \*

**24.**     "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

**25.**     "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

35.     The Union Policy is identified in the Schedule of Underlying Insurance of the EMC Policy.

36.     The Union Policy and the EMC Policy only afford coverage to individuals and entities that qualify as insureds.

37.     Section II (Who Is An Insured)[1] of the Union Policy and the EMC Policy provide as follows regarding entities identified as corporations:

**1.**     If you are designated in the Declarations as:
                                   * * *
    **(d)**     An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.**     Each of the following is also an insured:

    **a.**     Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. [. . .]
                                   * * *
    **b.**     Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.
                                   ***
**3.**     Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

---

[1] The numbering/lettering systems setting forth policy terms differ slightly between the Union Policy and the EMC Policy.  In the interests of consistency and efficiency, when the Complaint makes specific allegations referring to identical provisions in both policies, this Complaint uses the numbering and lettering system of the Union Policy only.

      **a.**    Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

* * *

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

38.    The Union Policy as amended by The General Liability Elite Extension CG7578 (06/17) amends Section II (Who Is An Insured) to include the following:

    1.f.    Any legally incorporated subsidiary in which you own more than 50% of the voting stock on the effective date of this policy. However, insured does not include any subsidiary that is an insured under any other general liability policy, or would have been an insured under any other general liability policy, or would have been an insured under such a policy but for the termination of that policy or exhaustion of that policy's limits of liability.

39.    The Union Policy as amended by The General Liability Elite Extension CG7578 (06/17) amends Section II (Who Is An Insured) to include the following:

    1.    **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) subject to provisions in Paragraph **2.** below (hereinafter referred to as additional insured) when you and such person(s) or organization(s) have agreed in a written contract or written agreement that such person(s) or organization(s) be added as an additional insured on your policy [. . .]

40.    Section II (Who Is An Insured) of the EMC Policy also extends insured status to the following class of individuals and entities:

    **3.**    Any additional insured under any policy of "underlying insurance" will automatically be insured under this insurance.  [. . .]

41.    The Union Policy and the EMC Policy afford coverage for "property damage" caused by an "occurrence."

42.    The Definitions sections of the Union Policy and the EMC Policy define the terms "property damage" and "occurrence" to mean the following:

Page **10** of 24

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

"Property damage" means:

a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

43.     The Union Policy and the EMC Policy contains the following exclusions relevant

to the relief sought in the Underlying Lawsuit:

a.      **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.      **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)     That the insured would have in the absence of the contract or agreement; or

(2)     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract. [. . .]

* * *

k.      **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l.      **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.   Damage to Impaired Property or Property Not Physically Injured.**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**   A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**   A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

44.   The Definitions sections of the Union Policy and the EMC Policy define terms

used in the referenced exclusions to mean the following:

**8.**   "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.**   It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**   You have failed to fulfill the terms of a contract or agreement;

If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or you fulfilling the terms of the contract or agreement.

**9.**   "Insured contract" means:

\* \* \*

**f.**   That part of any other contract or agreement pertaining to your business [. . .] under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means liability that would be imposed by law in the absence of any contract or agreement.  [. . .]

\* \* \*

**16.**   "Products-completed operations hazard":

**a.**   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      **(1)**     Products that are still in your physical possession; or

      **(2)**     Work that has not yet been completed or abandoned.  [. . .]

\* \* \*

**21.**    "Your product":

    **a.**    Means:

      **(1)**     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)**    You;

        **(b)**    Others trading under your name; or

        **(c)**    A person or organization whose business or assets you have acquired; and

      **(2)**     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**    Includes:

      **(1)**     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

      **(2)**     The providing of or failure to provide warning or instructions.

    **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**    "Your Work":

    **a.**    Means:

      **(1)**     Work or operations performed by you or on your behalf; and

      **(2)**     Materials, parts or equipment furnished in connection with such work or operations

    **b.**    Includes:

      **(1)**     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      **(2)**     The providing of or failure to provide warnings or instructions.

45.     In order to obtain coverage under the Union Policy and the EMC Policy, FLO-SYSTEMS and any other individual or entity qualifying as an insured must comply with the following conditions precedent:

**a.**     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. If you notify an "underlying insurer" of an "occurrence" or offense involving "bodily injury" or "personal and advertising injury" you must see to it that we are also notified in writing as soon as practicable. To the extent possible, notice should include:

**(1)**     How, when and where the "occurrence" or offense took place;
**(2)**     The names and addresses of any injured person or witnesses; and
**(3)**     The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**     If a claim is made or "suit" is brought against any insured, you must:

**(1)**     Immediately record the specifics of the claim or "suit" and the date received; and
**(2)**     Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**     You and any other involved insured must:

**(1)**     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

* * *

**d.**     No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## COUNT I – DECLARATORY JUDGMENT
### FSI IS NOT AN INSURED

46.     Plaintiffs adopt and reallege the allegations of Paragraphs 1 through 45 above as and for Paragraph 46 of Count I, as if fully set forth herein.

47.     FLO-SYSTEM is the named insured on the Union Policy and the EMC Policy. As such, references to "you" and "your" throughout the policies refer to FLO-SYTEMS.

48.     FSI is not an "executive officer," director, shareholder, "volunteer worker," "employee," real estate manager, or temporary custodian of FLO-SYSTEMS.

49.     FSI was formed in 2013 and, therefore, does not qualify as a newly acquired or formed organization.

50.     FSI is (or was) a separate legal entity and sister company of FLO-SYSTEMS, such that FSI does not qualify as a subsidiary of FLO-SYSTEMS.

51.     There is no contract agreement between FSI and FLO-SYSTEMS requiring FLO-SYSTEMS to name FSI as an additional insured on FLO-SYSTEMS' policies of insurance.

52.     FSI does not satisfy any of the express requirements to be an insured under either the EMC Policy or the Union Policy.

53.     Because FSI is not an insured under the Union Policy or the EMC Policy, Plaintiffs do not owe FSI a duty to defend FSI in connection with the Underlying Lawsuit or a duty to indemnify FSI for a settlement or judgment in connection with the Underlying Lawsuit.

WHEREFORE, Plaintiffs, UNION INSURANCE COMPANY OF PROVIDENCE and EMPLOYERS MUTUAL CASUALTY COMPANY, prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the Union Policy and the EMC Policy, together with the following relief:

A.     that FSI does not qualify as an insured under the Union Policy or the EMC Policy;

B.     that UNION and EMC owe no duty to defend FSI in connection with the Underlying Lawsuit under the Union Policy or the EMC Policy;

C.     that UNION and EMC owe no duty to indemnify FSI in connection with the Underlying Lawsuit under the Union Policy or the EMC Policy; and

D.      that this Court grant such other and further relief as it deems just and equitable.

## COUNT II – DECLARATORY JUDGMENT
## NO "PROPERTY DAMAGE" CAUSED BY AN "OCCURRENCE"

54.     Plaintiffs adopt and reallege the allegations of Paragraphs 1 through 45 above as and for Paragraph 54 of Count II, as if fully set forth herein.

55.     Pursuant to the Insuring Agreements of the Union Policy and the EMC Policies, persons and organizations qualifying as insureds are only entitled to coverage for "property damage" caused by an "occurrence," not otherwise subject to an exclusion.

56.     The Underlying Lawsuit alleges defective sealant prevents Underlying Plaintiff from using the Water Tank to distribute water to residents.

57.     The Underlying Lawsuit seeks relief from FLO-SYSTEMS and FSI in the form of repair and/or replacement of the sealant and/or the cost to hire another contractor to repair and/or replace the sealant.

58.     The Underlying Lawsuit only alleges damage to the work or product of FLO-SYSTEMS and/or FSI.

59.     Relief in the nature of repair and replacement of a defective product or construction constitutes economic losses and does not constitute "property damage."

60.     Repair and replacement of an insured's work or product does not constitute "property damage."

61.     Damage to the insured's own work or product does not constitute "property damage."

62.     There is no "occurrence" when a subcontractor's defective workmanship necessitates removing and repairing work.

63.     The Underlying Lawsuit does not allege "property damage" caused by an "occurrence," such that the Insuring Agreements of the Union Policy and the EMC Policy are not satisfied.

WHEREFORE, Plaintiffs, UNION INSURANCE COMPANY OF PROVIDENCE and EMPLOYERS MUTUAL CASUALTY COMPANY, prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the Union Policy and the EMC Policy, together with the following relief:

A.     that the Underlying Lawsuit does not allege "property damage" caused by an "occurrence";

B.     that UNION and EMC owe no duty to defend FLO-SYSTEMS or FSI in connection with the Underlying Lawsuit under the Union Policy or the EMC Policy;

C.     that UNION and EMC owe no duty to indemnify FLO-SYSTEMS or FSI in connection with the Underlying Lawsuit under the Union Policy or the EMC Policy; and

D.     that this Court grant such other and further relief as it deems just and equitable.

## COUNT III – DECLARATORY JUDGMENT
## PRIOR KNOWLEDGE / KNOWN LOSS

64.     Plaintiffs adopt and reallege the allegations of Paragraphs 1 through 45 above as and for Paragraph 64 of Count III, as if fully set forth herein.

65.     The Union Policy and the EMC Policy only afford coverage for "property damage" if the following Insuring Agreement requirement is satisfied:

Prior to the policy period, no insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

66. On March 30, 2017, Underlying Plaintiff filed a nearly identical pleading against Du-Con and FLO-SYSTEMS in the same venue as the Underlying Lawsuit that was previously pending under case no. 1711-CC00336 (the "2017 Lawsuit"). A copy of the Petition in the 2017 Lawsuit is attached hereto as **Exhibit E**.

67. The only meaningful difference between the petition in the 2017 Lawsuit and the Petition in the Underlying Lawsuit is the additional allegation in the Underlying Lawsuit that Du-Con and FLO-SYSTEMS attempted to remedy the sealant problems in 2017 and 2018, and that after the "supposed repair" Underlying Plaintiff discovered that the Water Tank "suffered [. . .] from the same defects as it previously had."

68. On April 17, 2017, Underlying Plaintiff served FLO-SYSTEMS with the petition in the 2017 Lawsuit.

69. On May 5, 2017, FLO-SYSTEMS entered an appearance in the 2017 Lawsuit through its present counsel.

70. On May 30, 2018, Underlying Plaintiff dismissed the 2017 Lawsuit without prejudice.

71. Prior to the October 1, 2017 effective date of the Union Policy and EMC Policy, FLO-SYSTEMS was aware of the defective sealant alleged in the Underlying Lawsuit.

72. Continuation, change or resumption of the issues arising from the allegedly defective sealant during the effective dates of the Union Policy and EMC Policy are deemed to have been known by FLO-SYSTEMS prior to the policy period.

73. Because FLO-SYSTEMS had prior knowledge of the defective sealant, the Insuring Agreement is not satisfied.

74.     Coverage is also precluded under the common law rule that a person or organization cannot obtain insurance coverage if, when purchasing an insurance policy, he/she/it knows or has reason to know that there is a substantial probability that he/she/it will suffer a loss.

WHEREFORE, Plaintiffs, UNION INSURANCE COMPANY OF PROVIDENCE and EMPLOYERS MUTUAL CASUALTY COMPANY, prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the Union Policy and the EMC Policy, together with the following relief:

A.     that the Insuring Agreement of the Union Policy and the EMC Policy is not satisfied because of FLO-SYSTEMS' knowledge of the allegedly defective sealant prior to the inception of the policies;

B.     that the common law rule applies to preclude coverage where an insured knows or had reason to know of a loss;

C.     that UNION and EMC owe no duty to defend FLO-SYSTEMS or FSI in connection with the Underlying Lawsuit under the Union Policy or the EMC Policy;

D.     that UNION and EMC owe no duty to indemnify FLO-SYSTEMS or FSI in connection with the Underlying Lawsuit under the Union Policy or the EMC Policy; and

E.     that this Court grant such other and further relief as it deems just and equitable.

### COUNT IV – DECLARATORY JUDGMENT
### EXCLUSIONS APPLY

75.     Plaintiffs adopt and reallege the allegations of Paragraphs 1 through 45 above as and for Paragraph 75 of Count IV, as if fully set forth herein.

76.     Coverage under the Union Policy and the EMC Policy is subject to exclusions.

77.     The Expected or Intended Exclusion applies.

78.     On March 30, 2017, Underlying Plaintiff filed the 2017 Lawsuit against FLO-SYSTEMS.

79.     The only meaningful difference between the petition in the 2017 Lawsuit and the Petition in the Underlying Lawsuit is the additional allegation in the Underlying Lawsuit that Du-Con and FLO-SYSTEMS attempted to remedy the sealant problems in 2017 and 2018, and that after the "supposed repair" Underlying Plaintiff discovered that the Water Tank "suffered [. . .] from the same defects as it previously had."

80.     On April 17, 2017, Underlying Plaintiff served FLO-SYSTEMS with the petition in the 2017 Lawsuit.

81.     On May 5, 2017, FLO-SYSTEMS entered an appearance in the 2017 Lawsuit through its present counsel.

82.     On May 30, 2018, Underlying Plaintiff dismissed the 2017 Lawsuit without prejudice.

83.     Prior to the October 1, 2017 effective date of the Union Policy and EMC Policy, FLO-SYSTEMS was aware of the defective sealant alleged in the Underlying Lawsuit.

84.     The Underlying Lawsuit alleges "property damage" expected from the standpoint of FLO-SYSTEMS.

85.     The Contractual Liability Exclusion applies.

86.     FLO-SYSTEMS and/or FSI entered into a contract with Du Con (the "Contract"), a copy of which is attached as **Exhibit F**.

87.     To the extent FLO-SYSTEMS and/or FSI are liable to Underlying Plaintiff and/or Du-Con in the Underlying Lawsuit, it would be for injury or damage for which FLO-SYSTEMS and/or FSI are liable to pay damages by reason of the assumption of liability in the Contract.

88.     The Contract is not an "insured contract."

89.     FLO-SYSTEMS and/or FSI would not be liable in the Underlying Lawsuit in the absence of the Contract.

90.     The Damage to Your Product Exclusion applies.

91.     The Underlying Lawsuit alleges damage to the sealant applied to the Water Tank. The Underlying Lawsuit alleges that FLO-SYSTEMS was subcontracted to supply the Water Tank and install the sealant.

92.     FLO-SYSTEMS "handled" the sealant, such that the sealant qualifies as "your product."

93.     The Damage to Your Work Exclusion applies.

94.     The Underlying Lawsuit alleges that FLO-SYSTEMS supplied and installed the Water Tank.

95.     The Underlying Lawsuit only seeks relief for repair and/or replacement of the Water Tank.

96.     The Water Tank and all of its components qualify as "your work."

97.     The Damage to Impaired Property or Property Not Physically Injured Exclusion applies.

98.     The Underlying Lawsuit does not allege that the Water Tank has been physically injured.

99.     The Underlying Lawsuit alleges a defect, deficiency, inadequacy, and/or dangerous condition in FLO-SYSTEMS' "product" and/or "work."

100.    The Underlying Lawsuit alleges that the defect, deficiency, inadequacy, and/or dangerous condition in FLO-SYSTEMS' "product" and/or "work" rendered the Water Tank unusable.

WHEREFORE, Plaintiffs, UNION INSURANCE COMPANY OF PROVIDENCE and EMPLOYERS MUTUAL CASUALTY COMPANY, prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the Union Policy and the EMC Policy, together with the following relief:

    A.    that one or more exclusions in the Union Policy and EMC Policy apply;

    B.    that UNION and EMC owe no duty to defend FLO-SYSTEMS or FSI in connection with the Underlying Lawsuit under the Union Policy or the EMC Policy;

    C.    that UNION and EMC owe no duty to indemnify FLO-SYSTEMS or FSI in connection with the Underlying Lawsuit under the Union Policy or the EMC Policy; and

    D.    that this Court grant such other and further relief as it deems just and equitable.

## COUNT V – DECLARATORY JUDGMENT
## LATE NOTICE/BREACH OF CONDITIONS PRECEDENT

101.    Plaintiffs adopt and reallege the allegations of Paragraphs 1 through 45 above as and for Paragraph 101 of Count V, as if fully set forth herein.

102.    On May 13, 2019 Underlying Plaintiff initiated the Underlying Lawsuit by filing a Petition.

103.    On January 6, 2020 Du-Con filed a Third Party Petition seeking indemnification from FSI.

104.    FLO-SYSTEMS and FSI were aware of Underlying Plaintiff's concerns with the sealant and Water Tank as early as Summer 2016.

105.    FLO-SYSTEMS was a defendant in the 2017 Lawsuit containing nearly identical allegations as the Underlying Lawsuit.

106.    Neither FLO-SYSTEMS nor FSI notified the Plaintiffs of the sealant issues or damage alleged in the Underlying Lawsuit until July 31, 2020.

107.     Neither FLO-SYSTEMS nor FSI notified the Plaintiffs of the Underlying Lawsuit or the pleadings filed in the Underlying Lawsuit until July 31, 2020.

108.     Plaintiffs did not learn about the sealant issues, damage alleged in the Underlying Lawsuit, or the pleadings filed in the Underlying Lawsuit, from FLO-SYSTEMS, FSI, or any other source, until July 31, 2020.

109.     FLO-SYSTEMS did not provide notice to Plaintiffs as soon as practicable of the alleged sealant issues or the damage at issue in the Underlying Lawsuit.

110.     FLO-SYSTEMS did not notify Plaintiffs as soon as practicable of the Underlying Lawsuit.

111.     FLO-SYSTEMS and FSI did not immediately provide copies of the Petition or Third-Party Petition to Plaintiffs.

112.     FLO-SYSTEMS (and FSI to the extent that entity qualifies as an insured, which Plaintiffs deny) materially breached one or more conditions precedent to coverage of the Union Policy and the EMC Policy.

WHEREFORE, Plaintiffs, UNION INSURANCE COMPANY OF PROVIDENCE and EMPLOYERS MUTUAL CASUALTY COMPANY, prays that this Honorable Court declare and adjudicate the rights and liabilities of the parties regarding the Union Policy and the EMC Policy, together with the following relief:

A.     FLO-SYSTEMS and FSI materially breached one or more conditions precedent to coverage of the Union Policy and the EMC Policy;

B.     that UNION and EMC owe no duty to defend FLO-SYSTEMS or FSI in connection with the Underlying Lawsuit under the Union Policy or the EMC Policy;

C.     that UNION and EMC owe no duty to indemnify FLO-SYSTEMS or FSI in connection with the Underlying Lawsuit under the Union Policy or the EMC Policy; and

    D.      that this Court grant such other and further relief as it deems just and equitable

                  Respectfully submitted,

                  **TRAUB LIEBERMAN STRAUS SHREWSBERRY, LLP**

                  /s/ *Jeremy S. Macklin*
                  Jeremy S. Macklin
                  One of the Attorneys for Plaintiffs
                  *Union Insurance Company of Providence* and
                  *Employers Mutual Insurance Company*

Jeremy S. Macklin
**TRAUB LIEBERMAN**
**STRAUS & SHREWSBERRY**
303 W. Madison St., Suite 1200
Chicago, Illinois 60606
(312) 332-3900 (t)
(312) 332-3908 (f)
jmacklin@tlsslaw.com